**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
═══════════════════════════════
                                )
STEPHEN E. McMILLAN,            )
                                )
            Plaintiff,          )
                                ) Civil Action No. 10-1867 (EGS)
       v.                       )
                                )
WASHINGTON METROPOLITAN         )
AREA TRANSIT AUTHORITY,         )
                                )
            Defendant.          )
                                )
───────────────────────────────
```

**<u>MEMORANDUM OPINION</u>**

Plaintiff Stephen McMillan, proceeding *pro se*, brings this action against the Washington Metropolitan Area Transit Authority ("WMATA"), alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.* ("Title VII"), as well as violations of his First and Fourteenth Amendment rights.  Pending before the Court is Defendant's Motion for Summary Judgment.  Upon consideration of the motion, the responses and replies thereto, the applicable law, the entire record, and for the reasons set forth below, the Court will **GRANT** Defendant's Motion for Summary Judgment.

## I.    BACKGROUND

Plaintiff McMillan was hired by WMATA as an elevator and escalator technician on November 30, 1999.  *See* Compl. at 1;[1] Def.'s Statement of Material Facts Not in Dispute ("Def.'s SMF") ¶ 1.[2]  McMillan alleges that around the time he began his employment with WMATA, he inquired into the status and distribution of a bonus owed to another WMATA employee.  Compl. at 1.  McMillan alleges this inquiry "caused negative consequences [for] the remainder of [his] career."  Compl. at 1. McMillan also alleges that around December 2000, he was denied any advancement opportunity, and he observed a pattern whereby each administrative job opening was filled by a female employee without regard to time-in-service or time-in-grade.  Compl. at 2.  In April 2002, McMillan filed a complaint with WMATA's Office of Civil Rights alleging mismanagement and discrimination.  Compl. at 2.  McMillan alleges that WMATA officials were abusive and ignored his complaint.  Compl. at 2. The Office of Civil Rights concluded that McMillan's claims did not involve allegations of discrimination and thus did not fall within the purview of Title VII.  Compl. at 2; *see also* Def.'s

---

[1] Because Plaintiff's Complaint does not contain numbered paragraphs or counts, the Court will refer to page numbers, where applicable.

[2] As a WMATA employee, Plaintiff is represented by Local 689 of the Amalgamated Transit Union.  *See* Def.'s Mot. Summ. J., Affidavit of Brian J. Donohoe ¶ 3; McMillan Dep. at 51:5-11.

SMF ¶ 3; McMillan Dep. Ex. 9.  The Office of Civil Rights instead recommended that McMillan contact his union representative or department superintendent.  *See* Def.'s SMF ¶ 3; McMillan Dep. Ex. 9.

In May 2007, McMillan attempted to file a complaint with WMATA's Inspector General's Office alleging fraud, waste and abuse.  Compl. at 2.  McMillan testified during his deposition that this complaint was based on the fact that the person who recruited Plaintiff in 1999 to work at WMATA never received a bonus for recruiting him.  *See* Def.'s SMF ¶ 3; McMillan Dep. 80:15-82:1.  McMillan alleges that his complaint was not allowed.  Compl. at 2.  Finally, McMillan states that "the intensity of the mobbing conducted by [WMATA] Officials over the next two years, resulted in the Plaintiff being discharged . . . from employment at WMATA[] without a hearing (which includes the Agencies' Local # 689 Union Grievance process) and with continued incompetent or erroneous affidavit testimony or documentation by the Agencies [sic] Office of Civil Rights."  Compl. at 2-3.

WMATA terminated McMillan on December 3, 2008 following an investigation into preventive maintenance work he was supposed to have performed at the Pentagon Metrorail Station.  *See* Def.'s SMF ¶ 4; *see also* Def.'s Mot. Summ. J., Lacosse Aff. Ex. 1

3

(December 3, 2008 Termination Letter).[3]  McMillan's termination
letter also referenced several work-related incidents in the
twenty-two months prior to his termination, including
insubordinate behavior, addressing a female dispatcher with
vulgar language, and early departure from his work location
without permission.  *See* Def.'s SMF ¶ 5; Lacosse Aff. Ex. 1.
One of the incidents referenced in the termination letter
occurred on May 8 or 9, 2008 when McMillan left work while on
duty to get a cup of coffee from 7-11.  *See* Def.'s SMF ¶ 6;
McMillan Dep. 60:12-73:4.  McMillan acknowledged that two men
followed him, and that he drove 80 miles per hour in rush-hour
traffic on I-395 until he "shook them."  *See* Def.'s SMF ¶ 6;
McMillan Dep. 63:11-65:18; McMillan Dep. Ex 3.

McMillan filed a charge of discrimination with the U.S.
Equal Employment Opportunity Commission ("EEOC") on July 28,
2008.  *See* Def.'s SMF ¶ 2; McMillan Dep. Ex. 4.  In the charge,

---

[3] The Court notes that there is some confusion in the record
regarding the year in which Plaintiff was terminated by WMATA.
Both Plaintiff's Complaint and Defendant's Statement of Material
Facts state that Plaintiff was terminated in December 2009.  *See*
Compl. at 2; Def.'s SMF ¶ 4.  However, Defendant's Memorandum in
Support of its Motion for Summary Judgment, as well as the
termination letter attached to Defendant's motion and
Plaintiff's deposition transcript, reflect that the termination
occurred in December 2008.  *See* Def.'s Mem. of P&A in Supp. of
Mot. for Summ. J. ("Def.'s Mem.") at 1, 6; Lacosse Aff. Ex. 1;
McMillan Dep. 9:19-10:19.  Because the Court finds that the date
of Plaintiff's termination is not material to the resolution of
the instant motion, the Court will assume for purposes of this
Opinion that Plaintiff was terminated in December 2008.

McMillan alleged retaliation occurring from April 11, 2002

through June 10, 2008.  In particular, McMillan stated:

> I filed an internal Equal Employment Opportunity complaint
> in 4-2002 . . . and since this time in 2002, I have been
> targeted and retaliated against.  The retaliation
> intensified in 2007 after I filed a complaint of Fraud,
> Waste and Abuse with the Inspector General's office.  I
> have been falsely accused of falsifying information, being
> late for work and departing work early.  I believe that I
> have been retaliated against in violation of Title VII of
> the Civil Rights Act[.]

McMillan Dep. Ex. 4.  The EEOC issued its "Dismissal and Notice

of Rights" on August 31, 2010.

Plaintiff filed his Complaint in this action on November 2,

2010.  Defendant filed a Motion for Summary Judgment on December

9, 2011, to which Plaintiff filed a response.  On April 20,

2012, this case was transferred to the undersigned from another

Judge on this Court.  The Court entered an Order on April 23,

2012, informing Plaintiff of the Federal and Local Rules that

apply to motions for summary judgment and directing Plaintiff to

file a supplemental response, which Plaintiff did.  The motion

is now ripe for determination by the Court.

## II.  STANDARD OF REVIEW

Summary judgment should be granted only if the moving party

has shown that there are no genuine issues of material fact and

that the moving party is entitled to judgment as a matter of

law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477

U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d

989, 991 (D.C. Cir. 2002).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex*, 477 U.S. at 323.  In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Keyes v. Dist. of Columbia*, 372 F.3d 434, 436 (D.C. Cir. 2004).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials; rather, it must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  Moreover, "although summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of [his] obligation to support [his] allegations by affidavits or other competent evidence showing that there is a genuine issue for trial."  *Adair v. Solis*, 742

F. Supp. 2d 40, 50 (D.D.C. 2010), *aff'd*, 473 F. App'x 1 (D.C.
Cir. 2012) (internal quotation marks and citations omitted).
"The mere existence of a scintilla of evidence in support of the
[non-movant]'s position will be insufficient; there must be
evidence on which the jury could reasonably find for the [non-
movant]." *Anderson*, 477 U.S. at 252.

Where, as here, a plaintiff is proceeding *pro se*, "the
Court must take particular care to construe the plaintiff's
filings liberally, for such [filings] are held 'to less
stringent standards than formal pleadings drafted by lawyers.'"
*Cheeks v. Fort Myer Constr. Co.*, 722 F. Supp. 2d 93, 107 (D.D.C.
2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).

III. **ANALYSIS**

   A.   **Grievance Procedures Under Section 66 of the WMATA
        Compact and WMATA's Sovereign Immunity**

Defendant argues that Plaintiff's allegations do not raise
legally cognizable claims under either Title VII or the
Constitution; rather, according to Defendant, Plaintiff alleges
labor disputes for which Plaintiff's exclusive remedy was the
grievance procedures of the collective bargaining agreement in
light of Section 66 of the WMATA Compact.  Def.'s Mem. at 7-10.
Plaintiff does not address this argument in either of his
responses to Defendant's motion.  "It is well understood in this
Circuit that when a plaintiff files an opposition to a motion .

. . addressing only certain arguments raised by the defendant, a
court may treat those arguments that the plaintiff failed to
address as conceded." *Howard v. Locke*, 729 F. Supp. 2d 85, 87
(D.D.C. 2010) (internal quotation marks and citation omitted).
Although the Court could treat Defendant's arguments as
conceded, the Court finds that even construing all of the
allegations in Plaintiff's Complaint and responses in the light
most favorable to him, Defendant is entitled to summary judgment
with respect to those claims that are properly construed as
labor disputes.

Section 66(c) of the WMATA Compact requires employees to
submit all unresolved "labor disputes" to arbitration.  D.C.
Code Ann. 9-1107.01(66)(c); *see also Beebe v. WMATA*, 129 F.3d
1283, 1286-87 (D.C. Cir. 1997); *Sanders v. WMATA*, 819 F.2d 1151,
1156-57 (D.C. Cir. 1987) (holding that appellants had to submit
claims for negligent termination to binding arbitration pursuant
to Section 66(c) of the WMATA Compact).  The law of this Circuit
is clear: summary judgment is appropriate for "claims that
*should* have been submitted to arbitration, even if they were not
actually heard." *Sanders*, 819 F.2d at 1157 (citation omitted).

Plaintiff's claims that another employee was denied bonus
money and that Plaintiff was discharged without a hearing are
properly construed as labor disputes, rather than discrimination
claims.  Even assuming McMillan attempted to grieve his

termination,[4] this claim was never submitted to arbitration. McMillan does not allege that he ever attempted to grieve the claims related to bonus money.  As the D.C. Circuit stated in *Sanders*, "under settled law, [] WMATA employees who failed to exhaust the grievance and arbitration proceedings, available to them, may not seek redress in court on claims that could and should have been grieved."  *Id.* at 1158 (citations omitted). This rule amounts to a form of collateral estoppel, or issue preclusion, prohibiting non-grieved complaints from being brought when, as here, Plaintiff had the opportunity and the obligation to do so.  *See Chester v. WMATA*, 335 F. Supp. 2d 57, 64 (D.D.C. 2004).  Because Plaintiff's labor disputes were either never grieved or never submitted to arbitration, they are not properly before the Court.

Furthermore, WMATA is immune from suit based upon Plaintiff's constitutional claims.  In signing the WMATA Compact, Maryland, Virginia, and the District of Columbia conferred upon WMATA their respective sovereign immunities.  *See Morris v. WMATA*, 781 F.2d 218, 219-20 (D.C Cir. 1986).  The Court construes Plaintiff's constitutional claims as claims

---

[4] Although WMATA's records indicate that McMillan never pursued a grievance related to his termination, McMillan alleged in his deposition that he filed a grievance, and it was denied. *See* McMillan Dep. at 47:16-50:5.  Therefore, construing the facts in the light most favorable to Plaintiff, the Court assumes he attempted to grieve his termination.

under 42 U.S.C. § 1983. *See Morris v. WMATA*, 702 F.2d 1037, 1041-42 (D.C. Cir. 1983) ("Morris' free speech claim relies directly on the First Amendment as the source of the remedy sought. . . . [W]e treat Morris' claim . . . as if it were an action under section 1983."). Numerous courts in this District have held that WMATA is immune from suit under Section 1983. *See, e.g., Sanders*, 819 F.2d at 1152-53; *Headen v. WMATA*, 741 F. Supp. 2d 289, 294 (D.D.C. 2010) ("WMATA's sovereign immunity means that [it] cannot be sued under § 1983."); *Disability Rights Council v. WMATA*, 239 F.R.D. 9, 20 (D.D.C. 2006) (same); *Lucero-Nelson v. WMATA*, 1 F. Supp. 2d 1, 7-8 (D.D.C. 1998) (same); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989) (holding that an arm of state is not a "person" subject to suit under section 1983, pursuant to the Eleventh Amendment). WMATA is therefore immune from Plaintiff's constitutional claims.

Defendant concedes that the grievance procedures cannot bar true discrimination claims. *See* Def.'s Mem. at 9. Even construing Plaintiff's claims in the light most favorable to him and assuming they state claims under Title VII, the Court concludes that Plaintiff failed to exhaust his administrative remedies and alternatively, that Defendant is entitled to judgment as a matter of law with respect to the Title VII claims.

B.    Exhaustion of Administrative Remedies

Defendant argues that Plaintiff failed to exhaust his administrative remedies with respect to several of his claims. Def.'s Mem. at 10-13.  Plaintiff again fails to respond to this argument, and therefore, the Court could treat it as conceded. However, even construing all of the allegations in Plaintiff's Complaint and responses in the light most favorable to him, the Court finds that Plaintiff has failed to exhaust his administrative remedies.

Before suing under Title VII, an aggrieved party must first file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory incident.  42 U.S.C. § 2000e-5(e)(1); *see Washington v. WMATA*, 160 F.3d 750, 752 (D.C. Cir. 1998), *cert. denied*, 527 U.S. 1038 (1999).  An employee must exhaust the administrative process for each discrete act for which he seeks to bring a claim.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002).  In addition, in filing a civil action in district court following an EEO charge, an employee may only file claims that are "like or reasonably related to the allegations of the [EEO] charge and grow[] out of such allegations."  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (citation omitted).  "Although it is true that the administrative charge requirement should not be construed to place a heavy technical burden on 'individuals untrained in

11

negotiating procedural labyrinths,'" *id.* (citation omitted), "it is also true that the requirement of some specificity in a charge is not a mere technicality," *id.* (internal quotation marks and citation omitted).

In his Complaint, Plaintiff alleges (1) that in November 1999, he inquired about a bonus owed to a co-worker; (2) that around December 2000, he was denied advancement opportunities in favor of female employees; (3) that in April 2002, he attempted to file a discrimination complaint with WMATA's Office of Civil Rights but was denied; (4) that in May 2007, he attempted to file a complaint with WMATA's Inspector General's Office but was denied; and (5) that he was terminated without a hearing in December 2008.  Plaintiff filed his charge with the EEOC on July 28, 2008.  *See* Def.'s SMF ¶ 2; McMillan Dep. Ex. 4.  With the exception of his termination, all of the other claims in Plaintiff's Complaint relate to acts that occurred more than 180 days prior to the filing of his EEOC charge of discrimination. These claims are therefore time-barred by the 180-day statutory period for filing an administrative claim.  The Court therefore concludes that Defendant is entitled to summary judgment on Plaintiff's claims related to (1) the November 1999 bonus inquiry, (2) the December 2000 advancement opportunities, (3) the April 2002 complaint, and (4) the May 2007 complaint.

C.    **Plaintiff's Discrimination Claims**

With respect to Plaintiff's termination, Defendant offers a legitimate, non-discriminatory explanation for its disciplinary action against Plaintiff.  *See* Def.'s Mem. at 13-16.

Employers are forbidden "from discriminat[ing] against an employee or job applicant because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (internal quotation marks and citation omitted); *see also Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); 42 U.S.C. § 2000e-3(a).  Retaliation claims brought pursuant to Title VII are assessed under the burden-shifting framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).  Pursuant to that framework, the plaintiff has the initial burden of proving, by a preponderance of the evidence, a *prima facie* case of retaliation.  *Id.*  To establish a *prima facie* case of retaliation, the plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal connection existed between the two.  *Id.*  Once the plaintiff has established a *prima facie* case, "the burden shifts to the defendant 'to articulate some legitimate,

nondiscriminatory reason for the [action in question].'" *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). In asserting a legitimate, non-discriminatory explanation, the defendant "need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254 (internal citation omitted).  The burden then shifts back to the plaintiff to demonstrate that the asserted reason is pretextual.  *See id.* at 253.  The plaintiff at all times retains the burden of persuasion.  *Id.*

At the summary judgment stage, once the defendant provides a legitimate, non-discriminatory explanation, "the district court need not -- *and should not* -- decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).[5]  Rather, the sole inquiry becomes whether the plaintiff produced "sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the [plaintiff] on [a prohibited basis]."

---

[5] Although *Brady* involved a race discrimination claim, the D.C. Circuit also applies *Brady*'s framework to retaliation claims.  *See Jones*, 557 F.3d at 678-79.

*Id.; see also Jones*, 557 F.3d at 678.  In other words, the *McDonnell Douglas* burden-shifting framework essentially disappears and the only remaining issue is whether the employer discriminated against the employee.  In evaluating whether the plaintiff defeats summary judgment, the Court considers all the relevant circumstances in evidence, including the strength of the *prima facie* case, any direct evidence of discrimination, any circumstantial evidence that defendant's proffered explanation is false, and any properly considered evidence supporting the employer's case.  *See Jones*, 557 F.3d at 677, 679.

Even assuming McMillan has stated a *prima facie* case of retaliation, Defendant asserts a legitimate, non-discriminatory explanation for its discipline and termination of Plaintiff.  In particular, as the termination letter states, McMillan was placed on administrative leave pending the outcome of an investigation regarding maintenance he performed on an escalator unit.  *See* Lacosse Aff. Ex. 1, at 1.  The investigation concluded that McMillan had been negligent in his performance of maintenance and that he had reported inaccurate data to Management, which was a violation of Metro's Metrorail Safety Rules and Procedures, as well as Metro's Department of Operations Office of Elevator and Escalators Safety Maintenance Practices and Procedures.  *Id.*  In addition, the termination letter noted that, during the past twenty-two months, McMillan

had been involved in several incidents resulting in disciplinary actions, including (1) a written warning in February 2007 for addressing a dispatcher with vulgar language; (2) a one-week suspension for insubordinate behavior in May 2007; (3) a two-week suspension for tardiness, addressing a supervisor with vulgar language, and insubordinate behavior in November 2007; and (4) a two-week suspension for early departure from his work location without permission in June 2008. *Id.* at 2.  With respect to the June 2008 suspension, Plaintiff acknowledged that he left work prior to the end of his shift to drive to 7-11 to get a cup of coffee.  McMillan Dep. 66:17-67:22.  Plaintiff testified in his deposition that he was followed by two "suspicious males," and that he exceeded the speed limit and drove 80 miles per hour in rush-hour traffic on I-395 until he "shook them."  McMillan Dep. 63:11-65:18; *see also* McMillan Dep. Ex 3.  WMATA suspended Plaintiff for two weeks as a result of this incident.  McMillan Dep. 70:20-22.

The Court finds that WMATA has asserted a legitimate, non-discriminatory explanation for its discipline and termination of Plaintiff.  The burden therefore shifts to Plaintiff to demonstrate that this explanation was a pretext for discrimination. *Wiley*, 511 F.3d at 155.  Plaintiff has completely failed to do so.  In his responses, McMillan has made only a single conclusory allegation -- unsupported by any record

16

evidence -- that Defendant's proffered reasons were pretextual. *See* Pl.'s Resp. to Def.'s Statement of Material Facts, Docket No. 16, at 6 ("Plaintiff proffers legally sufficient evidence of pretext.").   This allegation, without more, is insufficient to raise any issues of material fact that would preclude summary judgment.   *See Hastie v. Henderson*, 121 F. Supp. 2d 72, 77 (D.D.C. 2000), *aff'd*, No. 00-5423, 2001 WL 793715 (D.C. Cir. 2001) ("To defeat a motion for summary judgment, a plaintiff cannot create a factual issue of pretext with mere allegations or personal speculation, but rather must point to 'genuine issues of material fact in the record.'" (citation omitted)). The Court therefore concludes that no reasonable jury could find that Defendant's stated reasons for Plaintiff's termination were pretextual.

IV.   **CONCLUSION**

     For the foregoing reasons, Defendant's Motion for Summary Judgment is hereby **GRANTED**.   An appropriate Final Order will accompany this Memorandum Opinion.


**SIGNED:**     **Emmet G. Sullivan**
              **United States District Court Judge**
              **October 12, 2012**